**In re PHAR–MOR, INC. SECURITIES LITIGATION.**

**PHAR–MOR, INC., Plaintiff,**

v.

**COOPERS & LYBRAND, Defendant.**

Civ. A. Nos. 92–1938, 92–2108.
MDL No. 959, Misc. No. 93–96.

United States District Court,
W.D. Pennsylvania.

June 1, 1995.

Mary–Jo Rebelo, Joseph F. McDonough, James P. Hollihan, Paul A. Manion, Manion, McDonough & Lucas, Pittsburgh, PA, for plaintiff.

Kathryn L. Simpson, Vincent J. Grogan, Grogan, Graffam, McGinley & Lucchino, Richard Wile, Wile, Georgiades, Homyak & Norkus, Pittsburgh, PA, Robert J. Sisk, Theodore V.H. Mayer, Robb W. Patryk, Hughes, Hubbard & Reed, New York City, for defendant.

## OPINION

ZIEGLER, Chief Judge.

Pending before the court are the motions of defendant, Coopers and Lybrand ("Coopers"), and third-party defendants, Corporate Partners, L.P., Corporate Offshore Partners, L.P., The State Board of Administration of Florida, Lazard Freres & Co., Lester Pollack and Jonathan Kagan (collectively "Corporate Partners"), for summary judgment with respect to the claims asserted by plaintiff, Phar–Mor, Inc. ("Phar–Mor"), against Coopers.[1] The central issue raised in the motions is whether the wrongful acts of certain Phar–Mor officers and employees should be imputed to the corporation as a matter of law so as to bar Phar–Mor's claims.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, we must examine the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

This civil action is one of over forty civil actions that have been consolidated in this court as part of the multidistrict litigation styled *In re Phar–Mor, Inc. Securities Litigation,* MDL No. 959. Phar–Mor, a deep discount drugstore chain, has alleged claims of negligence, misrepresentation, outrageous conduct and breach of contract against Coopers, its former auditors, for alleged accounting malpractice during the fiscal years 1989 through 1991. In essence, the company contends that Coopers failed to perform audits of Phar–Mor's financial statements in accordance with generally accepted auditing standards and, consequently, failed to detect the financial fraud perpetrated by several officers and employees of Phar–Mor. Coopers issued "clean" audit opinions after each of the audits during the fiscal years 1989 through 1991. The evidence of record establishes that the financial statements for those fiscal years falsely portrayed Phar–Mor as a profitable concern by overstating its financial performance by approximately $500 million. Shortly after the fraud was revealed in 1992, Phar–Mor filed for protection under Chapter 11 of the Bankruptcy Code.

Phar–Mor admits that the fraud was masterminded by its former Chief Operating Officer (Michael Monus), and was directed by its former Chief Financial Officer (Patrick Finn). Other high level officers who alleged-

1. Corporate Partners is a party to this action by way of third-party claims and cross-claims asserted against it. Because dismissal of Phar–Mor's claims against Coopers would necessarily result in dismissal of the claims against Corporate Partners, Corporate Partners has moved for judgment in favor of Coopers pursuant to Fed. R.Civ.P. 14(a), which provides that a "third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim."

ly participated in the fraud include the Vice President of Finance (Jeffrey Walley), and the Corporate Controller (Stanley Cherelstein). On the other hand, Phar–Mor denies that David S. Shapira, its Chief Executive Officer during the period of the fraud, and the Board of Directors were involved in or had any knowledge of the fraud.

The movants contend that the knowing participation of certain officers of Phar–Mor in the fraud must be imputed to the corporation, and because "a participant in a fraud cannot also be a victim entitled to recover damages," *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 454 (7th Cir.1992), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982), Phar–Mor's claims against Coopers cannot stand.[2] Phar–Mor rejoins that summary judgment is inappropriate because genuine issues of material fact exist concerning whether the wrongdoers were acting within the scope of their employment and whether such actions were adverse to Phar–Mor's interests.[3]

■ The general rule of imputation provides that "the fraud of an officer of a corporation is imputed to the corporation when the officer's fraudulent conduct was (1) in the course of his employment, and (2) for the benefit of the corporation." *Rochez Bros., Inc. v. Rhoades,* 527 F.2d 880, 884 (3d Cir. 1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976). This rule is premised on the principle that a corporation is merely "a creature of legal fiction," *Lokay v. Lehigh Valley Coop. Farmers, Inc.,* 342 Pa.Super. 89, 492 A.2d 405, 408 (1985), and can operate only through its officers, agents, and employees. As the Court of Appeals explained in *F.D.I.C. v. Ernst & Young,* 967 F.2d 166 (5th Cir.1992):

Because a corporation operates through individuals, the privity and knowledge of individuals at a certain level of responsibil-

ity must be deemed the privity and knowledge of the organization, else it could always limit its liability. Where the level of responsibility begins must be discerned from the circumstances of each case.

967 F.2d at 171 (citations and internal quotations omitted).

■ There is, however, a well-established exception to the imputation rule. A corporation is not imputed with the "knowledge of an agent in a transaction in which the agent secretly is acting adversely to the [corporation] and entirely for his own or another's purposes." *F.D.I.C. v. Shrader & York,* 991 F.2d 216, 223 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994) (quoting Restatement (2d) of Agency § 282(1) (1957)). The exception "focusses on whether the misdeeds of the corporate employee worked to the benefit or detriment of the corporation." *Comeau v. Rupp,* 810 F.Supp. 1127, 1139 (D.Kan.1992).

The cases cited by the parties in support of their positions merely establish that the inquiry into the application of the adverse interest exception is fact-intensive. *See, e.g., Cenco, supra* (fraud imputed to corporation where corrupt officers were also stockholders in the company); *F.D.I.C. v. O'Melveny & Meyers,* 969 F.2d 744 (9th Cir.1992), *rev'd on other grounds,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (fraud by high level officers cannot be imputed to savings and loan where "disaster, not benefit" accrued to the S & L and recovery by bankrupt S & L would serve to compensate the victims of the fraud and not the wrongdoers).

■ In the instant action, we hold that genuine issues of material fact preclude the entry of summary judgment in favor of Coopers. From the evidence of record, we cannot conclude as a matter of law that the fraudulent acts of Monus, Finn and others

**2.** The rule that a participant in a fraud cannot also be a victim and entitled to recover damages is derived from the fact that one of the elements of a fraud claim, namely, reliance on the truth of the fraudulent misrepresentation, is absent. *Cenco,* at 454.

**3.** We note that state law controls the issue before us. *O'Melveny & Meyers v. F.D.I.C.,* —— U.S.

——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). A choice of law analysis is not necessary, however, because the imputation laws of the two states with the most significant contacts to this action, Ohio and Pennsylvania, are consistent. *See Gordon v. Continental Casualty Co.,* 319 Pa. 555, 181 A. 574 (1935); *First Nat'l. Bank of New Bremen v. Burns,* 88 Ohio St. 434, 103 N.E. 93 (1913).

were intended to benefit Phar–Mor. While we recognize that Finn, Walley and Cherelstein have all testified that the motivation behind the fraud and resultant cover up was to provide time for management to resolve Phar–Mor's underlying business problems, such a motivation does not, in our judgment, necessarily equate to a finding that the fraudulent actors intended to benefit Phar–Mor. Indeed, a reasonable trier of fact could conclude that the true motive of the wrongdoers was the preservation of their employment, salaries, emoluments and reputations, as well as their liberty, at the expense of Phar–Mor's corporate well-being.

Pat Finn's testimony also supports denial of the motion. He testified that he knew that, during the cover up and proliferation of the fraud, Phar–Mor's directors were making critical business decisions based on false financial information. One such decision included the implementation of an aggressive expansion program in which Phar–Mor opened new and larger stores, most of which were unprofitable and increased Phar–Mor's losses. Finn testified that, had the Board of Directors known of the true financial condition of Phar–Mor, it would not have authorized the ill-fated expansion program. He also acknowledged that the opening of the new stores merely dug Phar–Mor "a bigger grave." Based on this testimony, a jury could conclude that the officers purposely acted in a manner that was contrary to Phar–Mor's business interests.[4]

Finally, we note that, under the proposed Reorganization Plan and Disclosure Statement filed by Phar–Mor in the bankruptcy action, Phar–Mor's claims against Coopers will be assigned to a litigation trust established by the plan, and any recovery by Phar–Mor in the case *sub judice* would inure to the benefit of the secured and unsecured creditors having an interest in the trust. Neither the fraudulent actors nor Phar–

Mor's equity holders would benefit from a recovery by Phar–Mor in this action. Thus, the objectives of tort liability, to-wit, compensation of victims of the wrongdoing and deterrence of future wrongdoing, would arguably be served should Phar–Mor ultimately prevail and recover on its claims. *F.D.I.C. v. O'Melveny & Meyers,* 969 F.2d at 750.

In sum, we hold that genuine factual issues exist which preclude the entry of summary judgment in favor of the movants based on Coopers' imputation defense, and the motion will be denied.[5]

Coopers has also moved for summary judgment on Phar–Mor's claim of fraudulent misrepresentation. Coopers contends that, under the facts of record, Phar–Mor cannot establish that Coopers acted with scienter. Both parties agree that, in order to establish a claim of fraudulent misrepresentation, the plaintiff must prove that the false representation was made "knowingly, or in conscious ignorance of the truth, *or recklessly without caring whether it be true or false.*" *Delahanty v. First Pa. Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243, 1252 (1983) (emphasis added). We find that Phar–Mor has raised a triable issue of fact as to whether Coopers performed its audits in a reckless manner on the basis of the report of its expert, the Barrington Consulting Group. Barrington Consulting reviewed all of Coopers' audits for fiscal years 1989, 1990 and 1991. The review concentrated on two specific areas: the audit of inventory and the audit of procurement and "Power Plan" income. With respect to all three of the audits, the expert concluded that:

> Coopers' numerous failures, including inappropriate reliance on management's representations and the insufficient and inappropriate application of procedures, leads us to conclude that Coopers' failure to discover and report the fraud and material misstatements to Phar–Mor's financial state-

---

4. Finn testified that the opening of the new stores was intended to assist the wrongdoers out of the problem by increasing sales volume, and that it was not their intent to lose more money. Again, however, it is for a jury to determine whether an intent to save the wrongdoers from their own fraud is equivalent to an intent to benefit the corporation.

5. For the same reasons, we also hold that genuine issues of material fact preclude a summary finding that Phar–Mor's officers were acting within the scope of their employment.

ments was wantonly deficient and recklessly indifferent to the rights of Phar–Mor.

In view of this report, we hold that Phar–Mor has presented sufficient evidence to avoid summary judgment on its fraud claim. Similarly, Coopers' motion to dismiss Phar–Mor's claims for punitive damages is also denied because, as Coopers acknowledged in its brief, punitive damages may be awarded where a defendant acts with reckless indifference to the rights of others. *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1097–98 (1985).

An appropriate order will follow denying the motions for summary judgment.

### ORDER OF COURT

AND NOW, this 1st day of June, 1995,

IT IS ORDERED that the motion (document no. 1437) of defendant, Coopers & Lybrand, for summary judgment on the claims asserted by plaintiff, Phar–Mor, Inc., be and hereby is denied.

IT IS FURTHER ORDERED that the motion (document no. 1429) of third-party defendants, Corporate Partners, L.P., The State Board of Administration of Florida, Lazard Freres & Co., Lester Pollack and Jonathan Kagan, for summary judgment on Phar–Mor's claims against Coopers be and hereby is denied.